# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                     **Case No. 06-CR-335**

**ANA HURTADO, et al.**
        **Defendants.**

## DECISION AND ORDER

The government charged defendant Ana Hurtado with conspiracy to distribute cocaine, contrary to 21 U.S.C. §§ 846 & 841(b)(1)(A). Defendant filed motions to suppress evidence obtained pursuant to a search warrant and a Title III wiretap order, to dismiss the indictment, and for discovery. The magistrate judge handling pre-trial proceedings in this case recommended that the motions to suppress and dismiss be denied, and denied the discovery motion. Defendant objects to the magistrate judge's determinations. My review of the motions to suppress and dismiss is de novo, Fed. R. Crim. P. 59(b), but I may set aside the magistrate judge's denial of the motion for discovery only if it is clearly erroneous or contrary to law, Fed. R. Crim. P. 59(a).

### I. MOTIONS TO SUPPRESS

**A.**    **Search Warrant Evidence**

Defendant moved to suppress evidence seized from her home pursuant to a search warrant, arguing that the warrant application failed to establish probable cause. In ruling on a motion to suppress evidence recovered pursuant to a search warrant, the court employs a sequential two-step test. See United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002). The

court first determines whether there is substantial evidence in the record supporting the magistrate judge's finding of probable cause to issue the warrant. United States v. Lloyd, 71 F.3d 1256, 1262 (7th Cir. 1995). When, as in the present case, "the affidavit is the only evidence presented to the warrant-issuing magistrate, 'the warrant must stand or fall solely on the contents of the affidavit.'" Koerth, 312 F.3d at 866 (quoting United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)).

Probable cause to issue a warrant exists when the warrant application alleges facts sufficient to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). The Supreme Court has explained that:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).

The reviewing court considers the warrant application in a realistic and common sense manner in order to determine whether it alleges specific facts and circumstances that would permit the issuing magistrate to reasonably conclude that the evidence sought to be seized was associated with the crime alleged and located in the place indicated. Koerth, 312 F.3d at 866-67. The reviewing court must give the magistrate's determination of probable cause considerable weight and resolve doubtful cases in favor of upholding the warrant. United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000).

If the court finds the warrant deficient, it must then proceed to the second step of the analysis, which is to determine whether the executing police officer could "have reasonably

2

believed that the facts set forth in the affidavit were sufficient to support a magistrate's finding of probable cause." Koerth, 312 F.3d at 866 (citing United States v. Leon, 468 U.S. 897, 920-24 (1984)). The government bears the burden of demonstrating by a preponderance of the evidence that the police relied in "good faith" on the magistrate's decision to issue the warrant. Koerth, 312 F.3d at 868. An officer's decision to seek a warrant is prima facie evidence that he acted in good faith. Peck, 317 F.3d at 757; Koerth, 312 F.3d at 868. "The defendant must defeat this presumption with evidence that the issuing magistrate judge wholly abandoned his judicial role or that the officer's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Wiley, 475 F.3d 908, 917 (7th Cir.), cert. denied, 127 S. Ct. 2966 (2007).

The warrant in the present case issued on the affidavit of Wisconsin Division of Criminal Investigation ("DCI") Special Agent Thomas Gorecki. (Def.'s Mot. to Suppress Evidence [R. 77] Ex. A.) Gorecki first described his background and experience in drug investigations (Id. Ex. A ¶¶ 1-6), then provided a detailed history of the investigation in this case, which included a series of Title III wiretaps (Id. Ex. A ¶¶ 12-14). On September 29, 2006, I authorized the interception of calls to and from Teodoro Meraz's cellular phone.[1] Gorecki averred that pursuant to this authorization he learned that Meraz supplied cocaine to various individuals, including defendant (Id. Ex. A ¶ 15), and provided details on Meraz's drug trafficking activities (Id. Ex. A ¶¶ 120-27).

Gorecki stated that law enforcement intercepted twenty-eight drug-related conversations between defendant and Meraz, that defendant utilized another person to meet with Meraz to

---

[1]Meraz came to the attention of law enforcement based on previous wiretap orders. (See id. Ex. A ¶ 99.)

3

obtain cocaine, and that she received kilograms of cocaine from Meraz. (Id. Ex. A ¶ 128.) Gorecki then described three of the intercepted calls.

On October 6, 2006, Meraz called defendant and, after some preliminaries, defendant stated, "So I'm asking you to bring that then." Meraz asked how "many cases of beer" she wanted. Defendant replied "two." Meraz then stated, "Okay. I'll call you so you can send the kid." Defendant agreed. Based on his training, experience and familiarity with the investigation, Gorecki believed that defendant ordered two kilograms of cocaine during this call. (Id. Ex. A ¶ 129.)

On October 10, 2006, Meraz called defendant and discussed coming by her house. In a previous conversation, defendant and Meraz had discussed defendant paying money to Meraz for controlled substances because he could not "front" the controlled substances. (Id. Ex. A ¶ 130.)

On November 23, 2006, Meraz called defendant and asked where she was. She answered, "At my house." Meraz stated, "Oh listen, cause I am here at the south side and the way I won't have to go down again because right now the guards are going to be on the lookout." Defendant stated, "Okay then." Meraz stated, "I will call you when I . . ." Defendant interrupted and said, "Listen, just what I am going to collect for you, right?" Meraz replied, "Listen, what a solution." Defendant then confirmed that Meraz was coming to her house and would call when he was outside. Three minutes later Meraz called defendant and stated that he was located outside. Defendant asked whether he drove a white vehicle. Gorecki averred that he knew based on the investigation that Meraz drove a white Yukon. Gorecki further averred that based on his training and experience and familiarity with the investigation that Meraz went to defendant's house to collect money defendant owed from a previous drug debt.

4

(Id. Ex. A ¶ 131.)

Based on this evidence, Gorecki requested a search warrant for defendant's house, as well as various other properties, which he described in an attachment to the affidavit. (Id. Ex. A attach. A.) The magistrate judge issued a warrant on November 29, 2006, authorizing agents to search for narcotics, packaging materials, paraphernalia, ledgers, drug proceeds, and other documents and indicia of ownership. Agents executed the warrant on December 1, 2006.

While Gorecki's affidavit contained a great deal of information about the alleged criminal activities of others, I have serious doubts that it established probable cause to believe that contraband or evidence of crime would be found in defendant's house. Gorecki provided detailed information on his investigation of a large-scale drug trafficking organization operating in the Waukesha, Wisconsin area and established Meraz's role as a probable drug supplier. However, of the affidavit's 146 paragraphs, only four pertained specifically to defendant, and Gorecki's averments linking Meraz's criminal activities to defendant amounted to little more than bare conclusions. The recorded calls between defendant and Meraz recounted in the affidavit are ambiguous, and Gorecki failed to explain how his training, experience or familiarity with the investigation permitted him to conclude that they pertained to drug trafficking.[2]

Nevertheless, I must deny defendant's motion under Leon. As discussed above, under

---

[2] In addition to noting the absence of detail, defendant claims that Gorecki's information was stale. However, Gorecki recounted calls he believed suggestive of drug dealing taking place on October 6 and 10, and November 23. The final call occurred less than a week before the warrant issued. Further, where, as here, "the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical." United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991) (internal quote marks omitted). Specifically, the quoted calls suggested an ongoing relationship between defendant and Meraz. Therefore, while I question the detail and specificity of the affidavit as it pertains to defendant, I cannot agree that the information pertaining to her was stale.

5

Leon's good faith exception, evidence recovered pursuant to a facially valid warrant will be suppressed only if the defendant can show that the issuing magistrate judge abandoned his neutral, detached judicial role, or that the supporting affidavit was so lacking in indicia of probable cause as to render entirely unreasonable official belief in its existence. Defendant fails to make the necessary showing. She makes no argument that the magistrate judge abandoned his judicial role and simply rubber-stamped the warrant application. Nor does she cite any cases in which "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand." Koerth, 312 F.3d at 869. Instead, she argues that Gorecki knew that the quoted telephone calls were insufficient, so he felt compelled to provide his own interpretation of what the calls were about.[3] However, there is nothing improper about a law enforcement officer interpreting what he believes to be drug code. See, e.g., United States v. Chavez-Miranda, 306 F.3d 973, 978 (9th Cir. 2002) (stating that, under the totality of the circumstances test, "otherwise innocent behavior may be indicative of criminality when viewed in context," and that "issuing judges may rely on the training and experience of affiant police officers").

For example, in United States v. Cancelmo, 64 F.3d 804 (2d Cir. 1995), the court found that Leon applied where the officers obtained a warrant based on their interpretation of facially innocent words, which they believed represented narcotics code. The court concluded that:

> the agents' interpretation of the conversations arguably established probable cause, even in the absence of other corroborative facts. Although the conversations may have had an innocent meaning, it can hardly be said that the

---

[3] Defendant does not contend that Gorecki deliberately or recklessly misled the magistrate judge.

6

agents' interpretations were unreasonable or implausible. See [United States v.] Fury, 554 F.2d [522, 530-31 (2d Cir. 1977)] (intercepted conversations, although "somewhat ambiguous at times, can be reasonably interpreted to indicate what the detective interpreted them to be"). Moreover, these conversations were not randomly intercepted; instead, they were part of an ongoing investigation of a known drug dealer who, according to a confidential informant, used code words such as "decks" and references to lumber when arranging narcotics transactions. Understood in this context, the conversations, which at points appear cryptic even to an untrained ear, arguably support a finding of probable cause.

Id. at 808. I reach a similar conclusion in the present case. Defendant was linked to a major cocaine distributor, and it was not unreasonable under the circumstances for Gorecki to interpret their conversations as he did. Thus, for the foregoing reasons and those stated by the magistrate judge, I find that the good faith exception applies, and defendant's motion to suppress must be denied.[4]

**B.    Title III Evidence**

Defendant also moved to suppress evidence obtained via Title III wiretap orders for two phones primarily used by Teodoro Meraz, which issued on September 29, 2006 and October 31, 2006. Under Title III, the district court may issue an order authorizing the interception of

---

[4]In her objections on this motion, defendant makes no argument under Leon, instead reiterating her arguments that the recorded calls were vague, the information stale, and Gorecki's averments conclusory. I have rejected her contention that the information was stale, and the lack of detail in the affidavit is not such that the officers could not reasonable rely on the magistrate judge's determination of probable cause. See Koerth, 312 F.3d at 870 (applying Leon where affidavit contained some indicia of drug dealing, despite its conclusory and uncorroborated nature). In her objections on this issue, defendant also requests an evidentiary hearing. However, as discussed in the text, the validity of a search warrant generally must be assessed based on the information presented at the time of issuance. Further, an officer's good faith reliance is judged under an objective standard; thus, absent some indication that the officer provided false information, a hearing is generally not required to decide this issue either. Defendant provides no basis for holding a hearing in her case contrary to these general rules. See also Crim. L. R. 12.3 (E.D. Wis.) (stating that request for evidentiary hearing must contain a statement of the disputed material facts to be resolved). Therefore, the request for a hearing is denied.

7

telephonic communications if the government establishes that:

>    (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular enumerated offense;
>
>    (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
>    (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
>    (d) there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3).

In the present case, defendant argues that her statements must be suppressed because the Title III applications failed to establish probable cause, making the interception orders insufficient on their face. 18 U.S.C. § 2518(10)(a)(ii).[5] The standard for evaluating probable cause for a Title III order is the same as that employed for conventional search warrants. United States v. Leisure, 844 F.2d 1347, 1354 (8th Cir. 1988). Thus, the court must determine whether "'the information in the affidavit, when assessed in its totality, was sufficient to support a reasonable belief' that evidence of criminality by the subject of surveillance would be obtained." Id. (quoting Carter v. United States, 729 F.2d 935, 939 (8th Cir. 1984)).

In this case, the September 29, 2006 interception order was supported by the affidavit

---

[5] Defendant does not otherwise challenge the government's showing under § 2518(3).

8

of Agent Gorecki, who, as in the search warrant application discussed above, first provided a description of his background and experience in drug investigations. (Def.'s Mot. to Suppress Title III Intercepted Statements [R. 78] Ex. I ¶¶ 1-3.) Gorecki then discussed how the identification of Meraz as a drug dealer grew out of his on-going drug trafficking investigation, which included previous Title III orders. (Id. Ex. I at ¶¶ 15-19.) Gorecki further described some of the recorded calls between the initial targets of the investigation and Meraz, in which they discuss "letters" and "work," which Gorecki considered to be drug code. (Id. Ex. I ¶¶19; 37-39.) Gorecki also discussed how physical surveillance had identified possible locations used by Meraz and his associates to sell and store controlled substances. (Id. Ex. I ¶ 45.) The October 31, 2006 order was also based on Agent Gorecki's application, and his supporting affidavit contained additional information obtained pursuant to the earlier order. In the subsequent calls, Meraz and his associates used terms such as "tires" and "yards of carpet," which Gorecki again believed referred to cocaine. (Id. Ex. II ¶ 21-22.)

Defendant argues that the Title III applications were based on conclusory statements by Gorecki, but I disagree. Gorecki presented a detailed description of the drug trafficking organization under investigation and Meraz's role in it. It is true, as defendant notes, that Meraz and his confederates used cryptic language, but under the totality of the circumstances it was entirely reasonable for Gorecki to interpret these conversations as drug related, and the issuing court need not rule out all innocent possibilities before approving a warrant or interception order. See United States v. Taylor, 716 F.2d 701, 705-06 (9th Cir. 1983) (holding that search warrant affidavit need not "preclude other innocent interpretations for the activities at [the defendant's] house"). Therefore, for these reasons and those stated by the magistrate

9

judge, the motion to suppress intercepted statements must be denied.[6]

## II. MOTION TO DISMISS

Defendant moved to dismiss the indictment against her pursuant to Fed. R. Crim. P. 12(b)(3) on the grounds that the government lacks evidence that she conspired with her co-defendants to distribute cocaine. In her supporting brief, defendant reviews the discovery provided by the government and argues that, at most, the evidence shows that she had a buyer-seller relationship with Meraz. See United States v. Smith, 34 F.3d 514, 523 (7th Cir. 1994) (stating that the mere purchase or sale of narcotics is not sufficient evidence to prove that an individual joined a drug conspiracy). In the alternative, she argues that the discovery shows multiple conspiracies rather than one as charged in the indictment.

These may be good arguments at trial, but they are not proper subjects of a pre-trial motion to dismiss. As I noted in denying a similar motion by co-defendant Pedro Romo, "at the pretrial stage, the indictment ordinarily should be tested solely by its sufficiency to charge an offense, regardless of the strength or weakness of the government's case." United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988). It is well-settled that a defendant may not, via Rule 12(b), challenge the sufficiency of the evidence of his guilt. See, e.g., United States v. George, 403 F.3d 470, 472 (7th Cir.), cert. denied, 546 U.S. 1008 (2005); Risk, 843 F.2d at 1061. Put another way, there is no summary judgment analog in criminal cases. See United States v. Ziong, No. 06-CR-72, 2006 WL 3025651, at *2 (W.D. Wis. July 7, 2006) (collecting cases); see also United States v. Yasak, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not

---

[6]Defendant also argues that the orders of interception were invalid on their face, see 18 U.S.C. § 2518(10)(a)(ii), but her only basis for so arguing is the alleged lack of probable cause. Because the orders were supported by probable cause, the argument fails. Defendant identifies no other facial deficiency in the orders.

10

intended to be a 'summary trial of the evidence.'"). Accordingly, I decline to consider defendant's challenge to the sufficiency of the government's evidence.

Defendant points to no defects in the indictment (which would be a proper subject for a Rule 12(b)(3) motion), and as the magistrate judge explained, the indictment is sufficient. Therefore, I adopt the magistrate judge's recommendation and deny defendant's motion to dismiss.

### III.  MOTION TO COMPEL DISCOVERY

Finally, defendant moved to compel the government to provide the ten-day reports prepared pursuant to the Title III wiretap orders, statements of a cooperating witness inculpating her in the crime, and the minimization logs kept by the agents executing the wiretap orders. The magistrate judge denied all of these requests. I address each in turn.

### A.     Ten Day Reports

As the magistrate judge noted, courts have generally denied defense requests for ten-day reports prepared under 18 U.S.C. § 2518(6). (Magistrate Judge's Recommendation and Order [R. 114] at 5 (collecting cases).) The purpose of these reports is to allow the issuing district judge to detect and halt any abuses during the monitoring process. United States v. Chimera, 201 F.R.D. 72, 76 (W.D.N.Y. 2001). Defendant makes no argument that any information likely to be contained within these reports will assist in her challenge to the wiretap order or otherwise assist in her defense at trial. Further, defendant has been provided with both the tapes and the monitoring agents' logs. Thus, she will be able to determine for herself whether the agents violated the Title III order in the manner of interception. Providing her with the ten-day reports, which generally consist of summaries of the information contained in the

11

logs or line sheets, will provide her with nothing further.

In her objections, defendant provides no contrary case law and no argument as to why the magistrate judge's order was clearly erroneous. Accordingly, I decline to set the order aside under Fed. R. Crim. P. 59(a).

**B.     Cooperating Witness Statement**

Defendant asserts that the government has advised her of one cooperator who has provided an inculpatory statement, but the government has not yet determined whether that person will be called to testify at trial. Defendant contends that the statements of such cooperating witnesses are essential to her trial preparation. However, if the cooperator at issue does not testify, it is difficult to see the basis for defendant's assertion. Criminal Local Rule 16.1(b) requires the government (when it is following the "open file" policy) to provide reports of interviews with witnesses, but only if the government intends to call the witness in its case-in-chief. Defendant makes no argument that she is entitled to these statements under any other discovery rule, nor does she argue that disclosure is constitutionally required (under Brady, for instance). Further, the government retains a limited privilege to withhold information about informants. See Roviaro v. United States, 353 U.S. 53, 59 (1957). Defendant makes no specific showing that disclosure of this cooperator's statement would be helpful or essential to a fair determination of the case. See id. at 60-61. Accordingly, I see no clear error in the magistrate judge's denial of this motion.[7]

---

[7] That said, I do suggest that the government begin making determinations as to who it will call to testify at trial in this case. At the status scheduled for November 7, 2007, I intend to set trial dates. Should the government choose to call the cooperator at issue, Crim. L.R. 16.1(b) may require disclosure. I will permit defendant to renew this motion as circumstances require. Based on the present record, though, there is no basis for upsetting the magistrate judge's order.

12

## C. Minimization Logs

The magistrate judge denied defendant's request for production of the minimization logs based on the government's indication that it would voluntarily turn them over. Although defendant lists the denial of this request in her objections, she does not plainly state that the government has failed to turn over the requested information. Accordingly, I cannot find clear error in the magistrate judge's order. If the government has, in fact, failed to provide this information, defendant must file a new motion in conformity with Crim. L.R. 16.1(a).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 112) is **ADOPTED IN PART**, and defendant Hurtado's motion to suppress evidence (R. 77) is **DENIED**.

**IT IS FURTHER ORDERED** that the magistrate judge's recommendation (R. 113) is **ADOPTED**, and defendant Hurtado's motion to suppress Title III intercepted statements (R. 78) is **DENIED**.

**IT IS FURTHER ORDERED** that the magistrate judge's recommendation (R. 113) is **ADOPTED**, and defendant Hurtado's motion to dismiss (R. 79) is **DENIED**.

**FINALLY, IT IS ORDERED** that the magistrate judge's order (R. 114) denying defendant Hurtado's motion to compel discovery (R. 76) is **AFFIRMED**.

Dated at Milwaukee, Wisconsin, this 26th day of October, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

13